FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

2016 MAR 18 PM 1: 11

MIDDLE DIS...  COURT
ORLANDO, FL

Case No. 6:16-CV-483-Orl-40KRS

GRETA HOUSTON,

    Plaintiff,

vs.

NATIONSTAR MORTGAGE, LLC,

    Defendant.
_____/

## COMPLAINT

Plaintiff, Greta Houston sues Defendant, Nationstar Mortgage, LLC, and for her complaint alleges:

1. This is a complaint for monetary damages.

2. The Defendant, Nationstar Mortgage, LLC (hereafter "Nationstar") violated the Telephone Consumer Protection Act (TCPA) 47 USC § 227, *et. seq.* and its implementing regulations at 47 C.F.R. § 64.1200, *et. seq.*, the federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq., (hereinafter FDCPA) and the Florida Consumer Collection Practices Act, Fla. Stat. § 559.55 et seq. (hereinafter "FCCPA").

I
PARTIES

3. The Plaintiff, Greta Houston (hereafter "Houston") is a seventy year old natural person and citizen of Brevard County, Florida.

4. Nationstar is a registered foreign limited liability company in Florida with a principal place of business at 8950 Cypress Waters Boulevard, Dallas, TX 75019. Its registered agent for service of process is Corporation Service Company, 1201 Hays Street, Tallahassee, FL 32301-2525.

## II
## JURISDICTION AND VENUE

5. This Court has jurisdiction to grant relief pursuant to 28 U.S.C. §1331, 47 U.S.C. §227(b)(3), pursuant to 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1367.

6. Nationstar transacts business in the State of Florida. The conduct complained of which gives rise to the causes of action occurred in the County of Brevard. Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. 1391(b)(2) and (c), as the claims arose from acts of Nationstar perpetrated therein.

## III
## FACTUAL ALLEGATIONS

7. All conditions precedent to the bringing of this action have been performed, waived or excused.

8. In the year 2001, Russell Miller purchased a home for his family at 200 Ensenada Street SE, Palm Bay, FL 32909 (hereafter, the "subject home"). Houston is the daughter of Russell Miller, and she first became his care provider in the year 2010. Houston currently lives in the subject home.

9. On or about October 2, 2006, Russell Miller obtained a refinanced mortgage loan (hereafter the "subject debt") in the amount of $105,000.00 from Lender American Brokers Conduit

which was secured by the subject home. (Composite Exhibit A, pg. 6 - 25) The interest rate under the note was 6.375% and the monthly payment of principal and interest was $655.06. (Composite Exhibit A, pg. 6)  The mortgagee is Mortgage Electronic Registration Systems, Inc. (hereafter "MERS"). (Composite Exhibit A, pg. 9)

10. On February 1, 2010, Russell Miller defaulted on the subject debt. (Composite Exhibit A, pg. 2, para. 10) After default, on July 23, 2010, MERS assigned the subject debt to BAC Home Loans Servicing, LP (hereafter "BAC"). (Composite Exhibit A, pg. 28 - 29) On August 31, 2010, BAC filed a foreclosure suit against Russell Miller and his heirs in Brevard County case number 2010-CA-049910. (Composite Exhibit A, pg. 1 - 27) On April 8, 2011, BAC voluntarily dismissed its foreclosure suit. (Composite Exhibit A, pg. 32)

11. On February 29, 2012, Russell Miller died, leaving his estate to Houston. (Composite Exhibit A, pg. 33) On January 27, 2014, Bank of America (formerly BAC) assigned the debt to Nationstar. (Composite Exhibit A, pg. 34)  On September 12, 2014, Houston executed a loan modification agreement with Nationstar and with MERS, which amended and supplemented the original note and mortgage. (Composite Exhibit A, pg. 35 - 42)  On information and belief, MERS executed the loan modification agreement because the assignment from MERS to BAC was not effective as MERS did not possess the original promissory note or have a right to transfer the debt. In the modification agreement, the interest bearing principal balance was $88,344.97 at 4.625% and the monthly payment of principal and interest was $404.29. (Composite Exhibit A, pg. 36) $38,762.57 was characterized as a New Principal Balance and was deferred until the earlier of September 1,

2054, transfer or sale of the property or payoff of the interest bearing principal. (Composite Exhibit A, pg. 36) Pursuant to the terms of the loan modification agreement, no new credit or monies were issued to or loaned to Houston.

12. On October 1, 2014, Houston defaulted on the payments for the subject debt. (Composite Exhibit A, pg. 44, para. 7) Nationstar immediately began calling Houston's cellular telephone in an attempt to collect the debt. On April 21, 2015, Nationstar filed a foreclosure action against Houston. (Composite Exhibit A, pg. 43 - 78)

13. On May 19, 2015, Houston's foreclosure counsel, Joe Colombo, sent a notice to Nationstar that he represented Houston and that it was to immediately cease all contact with her. (Composite Exhibit A, p. 79) The cease contact demand clearly specified Mr. Colombo's name, address and telephone number.

14. Shortly thereafter, Nationstar began placing calls to Houston's cellular telephone number 321-917-6112. Excepting the weekends, Nationstar has called Houston's cellular telephone one time each and every day since she defaulted. Houston is elderly and the calls are confusing to her and distracting from the ability of her foreclosure counsel to adequately represent her.

## VI
### FIRST CAUSE OF ACTION
Violation of the TCPA - 47 USC § 227, *et. seq.*

15. Houston re-alleges and incorporates by reference paragraphs 1 through 14, above, as if fully set forth herein.

16. Nationstar did not have consent to contact Houston and it willfully and knowingly violated the TCPA when it called Houston after learning that she revoked consent for it to call her.

17. Nationstar caused Houston actual damages for pain and suffering, mental and emotional distress, anxiety, loss of sleep and nervousness from the repeated calls to her cellular telephone as well as actual damages from costs associated with the use of her available minutes on her cellular telephone.

18. On information and belief, Nationstar violated the automated-call requirements of 47 U.S.C. § 227(b)(1) and 47 C.F.R. § 64.1200(a)(1) by making calls to the Houston's cellular telephone or by authorizing an agent to do so:

    a. through the use of an automatic telephone dialing system.
    b. by using an artificial or prerecorded voice in the beginning of each call.

19. "The term "automatic telephone dialing system" means equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

20. On information and belief, Nationstar or it's authorized agent, used a predictive dialer to place the calls to Houston's cellular telephone. A predictive dialer is:

    > Equipment that dials numbers and, when certain computer software is attached, also assisted telemarketers in predicting when a sales agent will be available to take calls. The hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order ... [i]n most cases, telemarketers program the numbers to be called into the equipment, and the dialer calls them at rate to ensure that when a consumer answers the phone, a sales person is available to take the call.

(See *Conglio v. Bank of America*, 8:14-cv-01628; 2014 WL 6882294 (M.D.Fla., 12/4/2014), *also see*, 2008 TCPA Order 23 FCC Rcd. at 566, para. 12, *and see* 2003 TCPA Order, 18 FCC RCD. AT 14091, PARA. 131).

**WHEREFORE**, Houston prays for judgment against Nationstar as follows:

a. Enjoining the violation pursuant to 47 USC §227(b)(3)(A).
b. Actual damages for pain and suffering and emotional distress, for loss of available minutes on Houston's cellular telephone.
c. Statutory damages for each call pursuant to 47 USC §227(b)(3)(B).
d. Treble statutory damages for each call due to Nationstar's willful or knowing violation of 47 USC §227(b)(3).

### SECOND CAUSE OF ACTION
### Violations of the FDCPA
### [15 U.S.C. 1692c(a)(2)]

21. Houston repeats and realleges the allegations contained in paragraphs 1 - 14 above as if fully set forth herein.

22. 15 U.S.C. § 1692c(a) states:

> Without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with the collection of any debt—
>
> > (2) if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the attorney fails to respond within a reasonable period of time to a communication from the debt collector or unless the attorney consents to direct communication with the consumer;

23. Houston has been "the object of collection activity arising from consumer debt".

24. Houston is a "Consumer" pursuant to the FDCPA in that she is a natural person and was allegedly obligated to pay an debt arising out of a transaction where the money or services, which are the subject of the transaction, were primarily for a personal purposes, to wit: a mortgage loan on a personal residence which merged into a final judgment of foreclosure.

25. The debt at issue under the FDCPA was primarily for personal, family, or household purposes. The FDCPA defines "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes." 15 U.S.C. § 1692a(5).

26. Nationstar has engaged in an act or omission prohibited by the FDCPA.

27. Nationstar is a "debt collector" within the definition established by the FDCPA, 15 U.S.C. § 1692a(6), in that they use the U.S. Mails in a business, the principal purpose of which is to regularly collect or attempt to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Nationstar advertises on is website at http://www.nationstarholdings.com that it is one of the largest and fastest growing mortgage servicers with a servicing portfolio in excess of $375 billion and over 2 million customers.

28. While the term "creditor" means any person who offers or extends credit creating a debt or to whom a debt is owed, the term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another. 15 U.S.C. § 1692a(4). Nationstar received the defaulted debt for collection and did not issue or lend new credit or monies to Houston.

29. Each telephone call was without the prior consent of Houston. Consent was revoked when Houston's counsel delivered his Cease Contact Demand to Nationstar.

30. Nationstar knew or could readily ascertain Houston's counsel's name, address and telephone number.

31. Each of the hundreds of calls in the past year were a violation of 15 U.S.C. § 1692c(a).

32. **WHEREFORE**, Houston prays for judgment against Nationstar as follows:

   a.  Actual damages for pain and suffering and emotional distress.
   b.  Actual damages for from loss of available minutes on Houston's cellular telephone.
   c.  Statutory damages.
   d.  Attorneys' fees and costs.

THIRD CAUSE OF ACTION
Violation of the Florida Consumer Collection Practices Act
§ 559.72(18), Fla. Stat. (2015)

33. Houston repeats and realleges the allegations contained in paragraphs 1 - 14 above as if fully set forth herein.

34. Florida Statutes § 559.72(18) provides:

    In collecting consumer debts, no person shall:

    (18) Communicate with a debtor if the person knows that the debtor is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the debtor's attorney fails to respond within 30 days to a communication from the person, unless the debtor's attorney consents to a direct communication with the debtor, or unless the debtor initiates the communication.

35. Florida Statutes § 559.77(2) provides in part:

    the court shall consider the nature of the defendant's noncompliance with s. 559.72,

the frequency and persistence of the noncompliance, and the extent to which the noncompliance was intentional…The court may award punitive damages and may provide such equitable relief as it deems necessary or proper, including enjoining the defendant from further violations of this part.

36. Each of Nationstar's telephone calls to Houston were made by Nationstar at a time when Nationstar knew that Houston was represented by counsel and when it knew Houston's counsel's name and address.

37. By Houston's counsel's cease contact demand, Houston revoked consent for Nationstar to contact her.

38. Nationstar placed hundreds of telephone calls to Houston's cellular telephone number without consent.

39. Nationstar caused Houston actual damages for pain and suffering, mental and emotional distress, anxiety, loss of sleep and nervousness from the repeated calls to her cellular telephone.

40. Nationstar caused Houston actual damages from costs associated with the use of her available minutes on her cellular telephone and costs incurred in obtaining legal counsel to assist in causing the telephone calls to cease.

41. Houston has been "the object of collection activity arising from consumer debt".

42. Houston is a "Consumer" pursuant to the FCCPA in that she is a natural person and was allegedly obligated to pay a debt arising out of a transaction where the money or services which were the subject of the transaction were primarily for personal purposes, to wit: a mortgage loan on a personal residence.

43. The debt at issue under the FCCPA was primarily for personal, family, or household purposes. The FCCPA defines "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." Fla. Stat. § 559.55(1).

44. Nationstar has engaged in an act or omission prohibited by the or FCCPA.

45. Nationstar is a "debt collector" within the definition established by the FCCPA, Fla. Stat. § 559.55(6), in that it uses the U.S. Mails within this state in a business, the principal purpose of which is to to regularly collect or attempt to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

46. Nationstar is a "consumer collection agency" within the definition established by the FCCPA, Fla. Stat. § 559.55(7) in that it is a business entity engaged in the business of soliciting consumer debts for collection or of collecting consumer debts.

47. Nationstar regularly engages in the collection of consumer debts.

48. Nationstar is a "person" within the meaning of the FCCPA, and in particular as it is used in Fla. Stat. § 559.72.

49. **WHEREFORE**, Houston prays for judgment against Nationstar as follows:

    a. Actual damages for pain and suffering and emotional distress.
    b. Actual damages from loss of available minutes on Houston's cellular telephone.
    c. Statutory damages.
    d. Attorneys' fees and costs.

e. Equitable relief to enjoin further contact.
f. Declaratory relief to declare the contacts were illegal.

**George M. Gingo, P.A.**

*/s/ George M. Gingo*
GEORGE M. GINGO
Florida Bar No.: 879533
400 Orange St.
Titusville, Florida 32796
(321) 264-9624 Telephone
(866) 311-9573 Facsimile
Email: gingo.george@gmail.com
Co-Counsel for Plaintiff